### ARGUED AND DETERMINED

###### IN THE

# SUPREME JUDICIAL COURT

###### OF

# MASSACHUSETTS.

---

JOHN OSBORNE *vs.* CHARLES H. MORGAN & others.

Worcester. Oct. 7, 1881; Oct. 9, 1882. — April 4, 1883. C. ALLEN,
COLBURN, & HOLMES, JJ., absent.
Oct. 3, 1883. — March 4, 1884. FIELD & W. ALLEN, JJ.,
absent.

The general superintendent of a manufacturing corporation, whose works covered
several acres of ground, and in whose employ were fifteen hundred men, de-
signed, for one of its new mills, a mechanical fixture consisting of a rail sixteen
feet above the ground, on which was a movable truck and chain. The rail was
designed to go from one side of the building to the other. The foreman of the
master mechanic made it too short, so that, at one end, it only came within four-
teen inches of the side of the building. The master builder put it up and left
it without a stop. After the mill had been running some months, a closet was
built under the end of the rail, so that, in fact, although it was not designed for
this purpose, the truck could not get off of the rail while the closet remained,
on account of the chain going against it. The day after the closet was made,
the general superintendent, not having noticed that the rail was too short and
was not built as designed, ordered the closet removed, so far as it interfered
with the movement of the truck; and while a carpenter in the employ of the
corporation was engaged in this work, as directed by the master builder, the
truck came off of the rail and injured him. *Held*, in an action by the carpenter
against the general superintendent for the injuries so sustained, that, even if
the defendant was not liable for any negligence in the construction of the
building or its appliances, the jury would be warranted in finding that the de-
fendant failed in his duty to the plaintiff, in ordering the removal of the closet,
without ascertaining whether the removal would be attended with danger; and
that the action could be maintained.

TORT against Charles H. Morgan, Horace A. Young, William T. McNeil, and Eleazer Hinchley, for personal injuries occasioned to the plaintiff by the falling of a traverse pulley, block, and chain from an elevated railway in one of the mills of the Washburn and Moen Manufacturing Company in Worcester. After the former decision, reported 130 Mass. 102, the case was tried in this court, before *Lord*, J., who allowed a bill of exceptions, in substance as follows:

The block and chain constituted a heavy apparatus weighing between two and three hundred pounds, which was placed upon an elevated single railway suspended from a truss beam. The chain was an endless chain, and weighed one hundred pounds, and extended nearly to the ground from a height of eighteen feet. The railway was put up for general use in the mill, and as a permanent part of its structure. The traverse pulley was hung upon the railway, was movable backward and forward, and was used for the purpose of hoisting rolls from the rolling machinery placed in a line directly under the railway.

The plaintiff was a carpenter employed by said company, and it was his duty to do such general work as might be required of him in and about the manufacturing establishment. That portion of the establishment in which the railway and block and pulley were placed was a new mill, and was at the time of the plaintiff's injury not fully finished, although the work of rolling wire had already been begun in it, and was in operation at the time the injury occurred.

A closet for the use of the persons employed in the mill had been constructed upon one side of the room, one end of which closet was directly under one end of the railway, and for that reason was found to interfere with the convenient moving of the pulley and traverse along the line of the railway; and the plaintiff, on February 28, 1877, was directed to cut out a portion of the closet and so shorten it as not to be in the way of the convenient operation of the chain and pulley, and, while so employed, the traverse pulley and block rolled off the end of the railway upon the plaintiff, and he received the injuries complained of.

The plaintiff offered to prove, and contended from the fact that the block moved in that direction, that the railway inclined

upon a downward grade towards the end from which the block fell; and that the jarring produced by the operation of the machinery caused the same to move along the railway until it fell upon him. The railway extended from one side of the mill across it, and was designed to reach the other side; but it only reached within eighteen inches or two feet of the side of the mill at the end where the block fell, leaving an open space through which it might fall, and no guard or stop was placed there to prevent its falling; and this was the negligence complained of by the plaintiff.

The defendant Morgan was the general superintendent of the entire works of the Washburn and Moen Manufacturing Company, and had the general superintendence of the construction of the mill and the arrangement of the mechanism, and gave the direction for the construction of this railway and the apparatus connected with it. He made a free-hand sketch of the railway, and caused one of the employees named Daniels to make a mechanical drawing of the arrangement, and designed the railway to reach from side to side of the mill, and gave the general orders, but not the minute details, for the construction of the same. These plans were made in the October prior to the injury.

Morgan gave the defendant McNeil directions to put up the railway, and his attention was not called to it from that time until the day of the injury. On the morning of the injury, and about four hours before it, he came to that part of the works, and took hold of the chain and drew the truck to a point near the corner of the closet and a few feet from where it finally fell, and, finding that the closet was in the way of its passage, gave directions to McNeil to have the closet cut off so that the chain might conveniently pass at that point, and McNeil gave directions to the plaintiff to do the work necessary for shortening the closet. Morgan's attention was first called to the defect directly after the injury, when he declared that leaving the railway in that condition, without a stop, was gross carelessness.

The defendant Young was the superintendent of all the machinist's department, and had charge of constructing and putting up machinery, and was master mechanic of said company, and took his orders from Morgan. He received the drawings for the

construction of the railway, after they were completed, from Daniels, and gave the drafts to the foreman of the machine-shop, Hinchley, one of the defendants, with directions to have the railway constructed ready to put up. The drawing designed the rail to reach from side to side of the mill. The railway was constructed in the machine-shop, and from there carried to the mill, placed upon the ground ready to be hung, and was to be hung by McNeil, who was the master carpenter and builder for the company, by whom it was soon after hung, some time in December, and left in the condition in which it was at the time of the injury.

About a week before the injury, Young discovered the existence of the open space at the end of the rail, and ordered Hinchley to put a stop there, which the plaintiff contended was ordered to prevent the tackle from rolling off the railway; but the same was not done by any person until after the accident.

The plaintiff had no knowledge of the existence of the defect, and, from his employment or connection with the structure, had no reason to know it.

Upon the above offer of proof, the judge ruled that the action could not be maintained, and directed a verdict for the defendants; and the plaintiff alleged exceptions.

The case was argued at the bar in October, 1881, by *G. F. Verry & H. L. Parker*, for the plaintiff, and by *W. S. B. Hopkins & F. T. Blackmer*, for the defendants; and was reargued in October, 1882, by *Parker*, for the plaintiff, and by *Hopkins*, for the defendants.

W. ALLEN, J. It was decided in this case, in 130 Mass. 102, that the defendants might be liable to the plaintiff for damages occasioned by their negligence, although the parties were fellow servants. The question presented on these exceptions is whether there was evidence of negligence in the offer of proof made by the plaintiff. We think the case should have been submitted to the jury. There was some evidence that the rail was unsafe for the use for which it was intended; that the defendants, or some of them, were charged with, and owed to the plaintiff, the duty of seeing that it was in a safe condition; that they negligently allowed it to be unsafe; and that the plaintiff was injured in consequence.

The parties were fellow servants, and the defendants cannot be held liable to the plaintiff on account of any duty which they owed to their employer only, or for any negligence which was only a breach of contract with, or duty to, the common employer. They must have violated some duty which they owed to the plaintiff. The fact that they were entrusted by the employer with the duty of putting and keeping the appliance in a safe condition would be immaterial, except as it should show that they had such authority in regard to it, such charge and control of it, as would raise a duty of due care in respect of it towards others. A servant in charge of his master's property is liable to strangers for negligence in the management of it, not because he owes a duty in respect of it to his master, but because the possession and charge of property put him under an obligation of care in the use and management of it. The negligence must be negligence to strangers, and not to the master only. The violation of the master's orders, or the negligent or improper use of his property, not violating the duty which the servant owes to strangers, would not make him liable to them.

Whether there was negligence toward the plaintiff on the part of each defendant in the present case, was a question involving considerations of the charge and control he had over the appliance, and his knowledge and conduct in regard to it, as well as the relation of the plaintiff to it. Though the fact that parties are fellow servants in the business in which appliances are used does not absolve them from the obligation to each other to exercise due diligence in the use and care of such appliances, it is to be considered, with other circumstances, in determining what constitutes due care in any particular case. So far as the employment of the party injured is such that it involves a duty of care and watchfulness, or opportunity or obligation of knowledge, in regard to the dangerous object, it is material, not only on the question whether he himself exercised due care, but upon the question whether a particular act or omission of a fellow servant was wrongful towards him. The general rule, that the relation of each party to the subject matter is to be considered in determining the precise duty which either owes to the other in relation to it, is to be applied.

In the opinion of the court, evidence appears in the exceptions which ought to have been submitted to the jury upon the right of the plaintiff to recover against one or more of the defendants, and the evidence is not stated with sufficient fulness to make it profitable now to determine whether it would warrant a verdict against all the defendants, or any two of them, jointly.   On a new trial the evidence may not be the same, and instructions can then be given appropriate to the evidence as against each defendant.                                    *Exceptions sustained.*

The case was then tried in this court, before *W. Allen*, J. The plaintiff discontinued as to McNeil, who died after the action was brought; a verdict was ordered, by consent, for Hinchley; and the jury returned a verdict for Young, and against Morgan.   The judge allowed a bill of exceptions, which set forth all the evidence bearing on the question of Morgan's liability.   So far as it differed from that already stated, it was as follows:

The railway was sixteen feet from the floor, and stopped fourteen inches from the side of the building.   Morgan was a director in the corporation, as well as its general superintendent. He had in his charge twenty-five mills.   The corporation had in its employ at the time of the accident about fifteen hundred men, and was then operating machinery covering eleven or twelve acres.   There was no testimony in support of the contention that the pulley fell from the rail in consequence of jarring caused by the machinery, but several witnesses testified to the contrary.   The record of an action brought by the plaintiff against the Washburn and Moen Manufacturing Company, in which the jury returned a verdict for the defendant, was put in evidence.   The closet was no part of the original design of the mill, and was finished only the day before the accident, while the truck had been in use for several months. Morgan testified that the projection of a bolt would have been sufficient to prevent the truck going off the rail, and that it would have been a very simple thing to have contrived it so that it would not come off.

Each defendant asked the judge to rule that the plaintiff could not recover, on the evidence in the case, and to instruct the jury

as follows: "Fellow servants, in a common employment under a common employer, assume the risks of the want of care in each other in the common and ordinary relations of the employment, and are liable to each other only for damage growing out of want of due care in the discharge of some special duty or obligation owed to fellow servants on account of some special and peculiar relation to the business and to them."

The judge declined so to rule, and instructed the jury as follows: "The plaintiff, in order to show that the defendants were negligent in such a way as to make them liable to him, must show that the defendants were under some obligation in reference to the subject matter to which the alleged negligence referred. That matter is the condition of the rail or the use of the rail. The injury was caused by the falling of a block from a rail, because the rail was not constructed and maintained in such a manner as to prevent it from running off. The master is under obligation to his servant to procure suitable machinery, apparatus, building, and whatever is to be used in carrying on the business, and whoever is engaged by the master as servant in producing these appliances, machinery, and building, is not a fellow servant with those who are employed by the master in using them. A suit was brought by the plaintiff against the corporation, on the ground that the corporation had not furnished suitable appliances, that the original construction of this appliance was imperfect, and that the corporation was liable for it. The plaintiff was not a fellow servant with those who were engaged in constructing this machinery and appliance. The defendants in this action are not liable to the plaintiff for defects in the construction of the machinery. That concerns the corporation; so that, so far as there was negligence in the construction of the machine which was the cause of the injury to the plaintiff, you may dismiss that from your minds. The defendants are not liable for that; if liable at all, it is in their capacity of servants in the operation, and not in the construction, of the machinery. The plaintiff must show, in regard to the defendant he would hold, that that defendant had a duty in regard to the use of the apparatus, keeping it in repair and in condition to use, put upon him by the corporation, and that that duty, with the relation of the plaintiff himself to the defendants, was

such as to involve some duty to the plaintiff; that the defend-
ant violated that duty, and that the plaintiff did not.   Both of
these defendants did owe some obligation in regard to this rail.
If they knew that it was unsafe to use, it was their duty to pro-
hibit the use of it, and have it made safe.   If there is no evidence
that either of the defendants knew of the condition of this rail,
then the question arises whether there is any evidence that it was
their duty to know what that condition was.   That is the ground
on which the plaintiff rests.   He says that it was Morgan's duty
to know what the condition of the rail was.   He certainly owed
some duty in regard to that.   He was general superintendent of
the works.   He says that he fulfilled his duty in regard to that
by appointing an overseer, who had charge of the business in
the mill, and whose duty it was to see that it was kept in condi-
tion.   The plaintiff contends that that was not enough; that it
was his duty to have made personal inspection; and that, under
the circumstances of the case, the jury would find, if he was in
fact ignorant, that it was his own fault, — that it was a want of
that care and diligence which it was his duty to give.   That is a
question of fact for you to pass upon.   Take the situation.   Take
the relation of Morgan to the work, to this particular machine,
and say what your judgment is, — whether it was his duty so to
inspect it as to have known of this defect, or whether he ful-
filled his duty in apportioning the duty of inspection to others.
That is a matter for the jury to determine, and upon that deter-
mination will depend your answer to the question whether he
fulfilled or violated the duty which he owed, which was put upon
him by the corporation.   If he did not perform his duty in re-
gard to the corporation, the next question is whether he violated
his duty in regard to the plaintiff.   For it is not enough that
he violated a duty; he must have owed that duty to the plain-
tiff, and the plaintiff must have been in such a condition that
the defendant Morgan owed it to him.   The defendant says he
did not owe that duty to the plaintiff, because his relations were
such that he was not under obligation to keep the machinery in
order in this particular as to him.

"In considering the fact that the plaintiff was a fellow ser-
vant of the defendant, you want to consider the circumstances,
the opportunity which he had, to know in regard to his own

duty, and the actual knowledge which he had, to determine what would be reasonable care and diligence for the situation in which he was.

" Taking all these matters into consideration, the question is, as to the defendant Morgan, whether as to the operations in the mill he had a duty put upon him, which he violated; whether it was his duty to have known of that defect, and whether he owed that duty to the plaintiff, and, if so, was the plaintiff himself in the exercise of due care."

After some deliberation, the jury returned to the court-room, and asked for further instructions from the court, on the question whether, if the defendants did not know of the defects which caused the injury, they would be liable. The judge instructed them that Morgan was general superintendent of the works; that over this mill he had appointed a superintendent to see that it was kept in repair, and that it was for the jury to say whether that was a sufficient discharge of his duty. If he did not know of the defect, it was for the jury to say whether he ought to have known it. He would not be responsible unless he knew of it, or was under obligations to know of it.

The defendant alleged exceptions to the refusal to rule as requested, and to the rulings given.

The plaintiff also alleged exceptions to this portion of the judge's charge, viz. " The defendants in this action are not liable to the plaintiff for defects in the construction of the machinery. That concerns the corporation; so that, so far as there was negligence in the construction of the machine which was the cause of the injury to the plaintiff, you may dismiss that from your minds."

*W. W. Rice & W. S. B. Hopkins,* for Morgan.

*H. L. Parker,* for the plaintiff.

DEVENS, J. In this case, reported 130 Mass. 102, it was held that the negligent hanging and keeping by the defendants of the block and chain in such a place and manner as to be in danger of falling upon persons underneath would be a misfeasance or improper dealing with instruments in their actual use or control, for which they would be responsible to any person lawfully in the room and injured thereby, whose relation to the defendants was not such as to prevent him from maintaining the action;

and further, that the fact that the parties were fellow servants would not prevent recovery by the plaintiff.

The case having been again submitted to the jury, and a verdict having been rendered for the defendants, by direction of the presiding judge, upon the offer of proof made by the plaintiff, which was held insufficient to establish any right to recover, it was determined by this court that such direction was erroneous. The offer, as made, afforded some evidence that the rail was unsafe for the use for which it was intended; that the defendants, or some of them, were charged with, and owed to the plaintiff, the duty of seeing that it was in a safe condition to be operated; that they negligently allowed it to be unsafe; and that the plaintiff was injured in consequence.

In the case as presented on both occasions the distinction between the duty which the servant owes to his master, by reason of his contract with him, and the responsibility he is under to third persons and to his fellow servants for the exercise of due care in the management of those affairs the conduct of which is committed to him, was carefully pointed out.

It is said, in substance, in the opinion last given, that whether there was negligence towards the plaintiff, by either defendant, was a question involving considerations of the charge and control he had over the appliance, and his knowledge and conduct in regard to it, as well as the relation of the plaintiff to it; that the general rule to be applied is, that "the relation of each party to the subject matter is to be considered in determining the precise duty which either owes to the other in relation to it." It was held, in that discussion of the case, that, while evidence appeared by the offer of the plaintiff which was proper to be submitted to the jury upon the question of the liability of one or more of the defendants, it was not stated with sufficient fulness to enable the court profitably to discuss the question whether it would sustain a verdict against one or more of the defendants, and that therefore there should be a new trial.

The case having been since tried, and a verdict having been rendered against the defendant Morgan, it is presented to us upon the request made to the presiding judge that he should rule that, upon the evidence, there could be no recovery against

Morgan, which was refused; and upon the exception to the rulings given.

The rulings as given did not permit the plaintiff to recover against the defendants, or either of them, for any defects in the original construction of the machinery. It treated this as a matter which concerned the corporation solely, and permitted the jury to find the defendants liable only in their capacity of servants engaged in the operation and management of machinery. To this ruling the plaintiff excepted; but its correctness, in connection with the evidence, it is not necessary now to consider, as the exception is not insisted on, unless there is to be a new trial.

The defendant Morgan was a director in the Washburn and Moen Manufacturing Company, and general superintendent of its works, which were very extensive, employing large numbers of men, and occupying eleven or twelve acres with machinery. He deems that the question here presented is whether his whole duty is not performed when skilful and competent men are employed by him as subordinates in the management and operation of the machinery, as, from the great extent of the works, personal supervision on his part of the management of all the machinery would be simply impossible.

Without considering what should be the answer to this inquiry, if no personal supervision or direction by Morgan was proved in regard to the management or operation of the machinery by which the injury occurred, or of the other machinery or fixtures, with which such operation was immediately connected, it might fairly have been inferred from the testimony of Morgan himself that the direction given by him, in connection with the original faulty construction of the machine, was the immediate cause of the injury. *Stone* v. *Cartwright*, 6 T. R. 411, Lawrence, J. That there had been a defective construction of the rail upon which the truck, to which the pulley, block, and chain were appended, travelled, in that it did not extend across the room, and was not provided with any stop which would prevent the truck from passing over the end of the rail, and, further, that it was gross carelessness to leave unprotected the open space that intervened between the end of the rail and the wall, could hardly have been controverted. This gap was in no way necessary

for any operation of the machinery, and the danger therefrom had been obviated. A narrow closet had been constructed by the side of the wall, beyond which the truck with the block and chain could not pass to the end of the rail. As long as this structure stood, the danger to be anticipated from the fall of the truck could not occur. The defendant, thinking that the closet had been extended too far along the side of the wall, himself gave directions to have it cut off, so that it would not interfere with the free operation of the truck and its appendages, quite up to the side of the mill, and this direction was given because it did thus interfere. The defendant, at the time of giving this direction, took hold of the chain to see how the block moved, observed that the truck could not pass the closet, and, desiring that the space thus occupied by the closet should be used for the free movements of the truck and its appendages, as well as for other purposes, ordered the removal of the closet so far as it interfered with the passage of the truck. Having the right to control in the management and the operation of the machinery, in directing the removal of an obstacle which interfered with the more extended operation he intended to obtain for the truck, it was his duty to his fellow workmen to ascertain whether this would not be attended with danger to them, and, if so, to provide for their protection. That a single careful glance would have shown the hazardous condition in which the machinery was to be left, and that the threatened danger could have been averted by the most simple means, is admitted by Morgan; and, upon the facts as testified to by him, the jury were justified in finding that he had failed in the duty which he owed to a workman, rightfully in his place, who was injured by the fall of the truck through the gap which existed between the end of the rail and the wall, and which the execution of the order made dangerous.

It is suggested that it was left to the jury to determine whether the defendant owed a duty to his fellow workmen, and that this presents a question of law upon the facts, as, under proper instructions, they might have been found to be determined by the court. But even if such is the true construction of the ruling given, it is not important. When a question of law erroneously submitted to a jury is rightly decided by them, no ground of exception exists.

Nor is it important that the closet formed no part of the original design of the mill, or that it had only recently, and subsequently to putting in position the rail with its truck, been erected. On the morning of the injury, the closet afforded security against the danger in the operation of the machinery, which security the defendant by his order removed.

We do not perceive anything in the conduct or situation of the plaintiff which should prevent his recovery. He was engaged as a subordinate workman in executing the order given by the defendant to the master carpenter, and was in the place where his duty required him to be. There was nothing to excite his just apprehension, or cause him to inquire whether the act he was doing would expose him to such danger as that which he really incurred. *Exceptions overruled.*