### COMMONWEALTH *vs.* CLARENCE A. SMITH.

Suffolk.  Jan. 29. — Feb. 24, 1886.  HOLMES & GARDNER, JJ., absent.

Under the Pub. Sts. c. 57, § 2, as amended by the Sts. of 1884, c. 310, § 3, and 1885, c. 352, § 4, an inspector of milk cannot appoint an agent who shall have the right, in the absence of the inspector, and without his immediate personal direction and control, to take, by force and against the will of the owner, samples of milk for analysis from a carriage used for the conveyance of milk.

COMPLAINT to the Municipal Court of the South Boston District, by James F. Babcock, milk-inspector of the city of Boston, alleging that, on July 18, 1885, the defendant " did wilfully and

maliciously hinder, obstruct, and interfere with John Killeen, of said Boston, in the performance of his duty as the assistant to the said Babcock, milk-inspector, he, the said Killeen, being then and there the duly appointed agent of the said Babcock to take samples of milk for analysis, and he, said Smith, then and there well knowing the said Killeen to be the agent of the said Babcock." Trial in the Superior Court, on appeal, before *Blodgett,* J., who allowed a bill of exceptions, in substance as follows :

Killeen was called as a witness for the government, and was asked if he had been appointed milk-inspector's agent. To this the defendant objected, because, first, there was no law or authority for such appointment, and, second, because the appointment, being in writing (the witness stated that his appointment was by letter), could not be proved by parol. The judge overruled the first objection, and Killeen testified *de bene* that he asked the defendant, on July 18, 1885, the defendant then having charge and control of a wagon containing milk, which was being delivered to purchasers, for a sample of milk for analysis, (uncovering a badge on his vest at the same time,) which the defendant refused; that he then tried to take the sample himself from the defendant's carriage, but was obstructed and prevented by the defendant ; that he did not present to the defendant, nor did he have in his possession, any request in writing; that he had never met the defendant before ; and that nothing was said or done by him to indicate his authority beyond the request and the uncovering of the badge. What was on the badge, if anything, was not put in evidence.

The defendant testified that he did not know, and never had met, Killeen before said July 18 ; that he did not see the badge ; that Killeen did not say what he wanted the sample of milk for, but that he suspected that it was wanted for analysis by the milk-inspector ; and that he did refuse and prevent Killeen from taking the milk.

To prove Killeen's appointment as agent, the government then offered and put in evidence the following writing : " Boston, May 5, 1885. This may certify that Mr. John Killeen is a regularly authorized collector of samples for the department of milk-inspector of the city of Boston. James F. Babcock, milk-inspector."

James F. Babcock testified, without objection, that he was the duly appointed inspector of milk for the city of Boston.

The defendant asked the judge to rule that there was no evidence to warrant a conviction: 1. Because the St. of 1884, *c.* 310, § 3, was in force at the date of the alleged offence, and required the agent to have a request in writing. 2. Because there was no evidence of the appointment of Killeen as agent. 3. Because there was no law authorizing his appointment.

The judge declined to give these instructions, and instructed the jury that Babcock was authorized by law to appoint agents to take samples of milk for analysis; and that there was evidence in the case upon which they might find Killeen had been duly appointed as such agent.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. A. McGeough*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

FIELD, J. By the Pub. Sts. *c.* 57, § 1, "the mayor and aldermen of cities shall, and the selectmen of towns may, annually appoint one or more persons to be inspectors of milk for their respective places, who shall be sworn before entering upon the duties of their office," and each inspector is required to publish or post up a notice of his appointment. Such inspectors are therefore sworn public officers, known to the public.

Section 2 is as follows: " Such inspectors shall keep an office and books for the purpose of recording the names and places of business of all persons engaged in the sale of milk within their city or town. They may enter all places where milk is stored or kept for sale, and all carriages used for the conveyance of milk; and when they have reason to believe that any milk found by them is adulterated, they shall take specimens thereof and cause the same to be analyzed or otherwise satisfactorily tested, the result of which analysis or test they shall record and preserve as evidence; and a certificate of such result, sworn to by the analyzer, shall be admissible in evidence in all prosecutions under this chapter. The inspectors shall receive such compensation as the mayor and aldermen or selectmen may determine."

By § 3, " every person who conveys milk in carriages or otherwise for the purpose of selling the same in such city or town

shall annually . . . . be licensed by the inspector or inspectors of milk of such city or town."

By § 8, "any inspector of milk, and any servant or agent of an inspector who wilfully connives at or assists in a violation of the provisions of the chapter, shall be punished," &c.

The right given by the statutes to take specimens of milk was held to be a constitutional exercise of the police power of the Commonwealth, in *Commonwealth* v. *Carter*, 137 Mass. 12, on the ground that it was a reasonable method of inspecting an article of food.

The St. of 1884, c. 310, § 3, provides that § 2 of c. 57 of the Pub. Sts. "is amended so as to read as follows: Such inspectors shall keep an office, and shall record in books kept for the purpose the names and place of business of all persons engaged in the sale of milk within their city or town. Said inspectors may enter all places where milk is stored or kept for sale, and all persons engaged in the sale of milk shall on the request in writing of an inspector deliver to the person having the request a sample or specimen sufficient for the purpose of analysis of the milk then in his possession from such can or receptacle as shall be designated by the inspector or the person bearing the request. Said inspector shall cause the sample or specimen of milk so delivered to be analyzed or otherwise satisfactorily tested, the results of which analysis or test they shall record and preserve as evidence. The inspectors shall receive such compensation as the mayor and aldermen or selectmen may determine."

By § 5, § 8 of the Pub. Sts. c. 57, is amended " by adding, after the word ' chapter,' the words ' and whoever hinders, obstructs, or in any way interferes with any inspector of milk, or any servant or agent of an inspector, in the performance of his duty.' " It is under this section of the Public Statutes, as thus amended, that the present complaint was made.

By the St. of 1885, c. 352, § 4, which took effect on June 18, 1885, § 2 of the Pub. Sts. c. 57, is " amended so as to read as follows : Such inspectors shall keep an office and shall record in books kept for the purpose the names and places of business of all persons engaged in the sale of milk within their city or town. Said inspectors or their assistants may enter all places where milk is stored or kept for sale, and all carriages used for the

conveyance of milk, and the said inspectors or their assistants may take samples for analysis from all such places or carriages. The inspectors shall cause the samples of milk so taken to be analyzed or otherwise satisfactorily tested, the results of which analysis or test they shall record and preserve as evidence. The inspectors shall receive such compensation as the mayor and aldermen or selectmen may determine."

Cities and towns can appoint as many inspectors as they see fit, and can determine their compensation; the statutes imply that these inspectors may employ servants, agents, and assistants, but no authority is given to inspectors of milk to appoint deputies or assistants as officers with defined powers, although such authority is given to inspectors general of other articles. See Pub. Sts. *c.* 56, §§ 4, 23, 50, 64, 74.

It is perhaps immaterial to this case whether § 3 of the St. of 1884, *c.* 310, is repealed by § 4 of the St. of 1885, *c.* 352, although John Killeen, whom the defendant is charged with hindering, obstructing, and interfering with, did not have a request in writing from an inspector of milk addressed to the defendant. It may be assumed that the St. of 1885, *c.* 352, § 4, is the only statutory provision now in force in place of the Pub. Sts. *c.* 57, § 2. As there is no provision for the appointment of assistants to an inspector of milk, we think that the word "assistants" in the St. of 1885, *c.* 352, § 4, must mean the servants or agents of the inspectors, who are protected from interference in the performance of their duties by the St. of 1884, *c.* 310, § 5.

The important question of law in this case is whether an inspector can, under existing laws, appoint an agent who shall have the right, in the absence of an inspector, and without the immediate personal direction and control of an inspector, to take, by force and against the will of the owner, samples of milk from carriages used for the conveyance of milk. The right to take samples of milk against the will of the owner can only be justified by an act of the Legislature regulating a business which otherwise might become injurious to the community. The inspectors, in the performance of their duties, may need the assistance of servants and agents, but an intention on the part of the Legislature that the inspectors should have the right to delegate their powers to other persons ought not to be inferred from

equivocal phrases.    The general rule is that the performance of
public duties cannot be delegated by public officers, and the rea-
sonable inference is, that, unless there is a clear expression in
the statutes to the contrary, the Legislature intended that public
duties requiring the exercise of discretion should be performed
by public officers selected for that purpose with a view to the
intelligent and discreet discharge of such duties.    Without con-
sidering whether the Legislature could authorize inspectors to
delegate their powers to servants or agents, we think the exist-
ing laws show no such intention.    See *Boylston Market Associa-
tion* v. *Boston*, 113 Mass. 528; *Day* v. *Green*, 4 Cush. 433; *Clark*
v. *Washington*, 12 Wheat. 40.

There is no evidence that Killeen, in endeavoring to take
samples of milk from the defendant's carriage, was acting under
the specific direction of an inspector of milk.    The evidence
tends to show that he was acting upon his own judgment, and
according to his own discretion.                    *Exceptions sustained.*