JOSEPH E. BROWN & others *vs.* CITY OF NEWBURYPORT.

Suffolk.     March 29, 1911. — May 27, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Bills and Notes,* Validity, *Bona fide* purchaser. *Municipal Corporations,* Officers and agents. *Contract,* Implied in law. *Words,* "Approval."

In determining whether, in the hands of a *bona fide* purchaser for value before maturity, a note of a city, having upon it certificates of various votes of the city council and of its committee on finance and a certificate of the city treasurer, is a valid obligation which can be enforced against the city, all that appears in writing or print upon the note may be taken as a part of it.

In the body of a promissory note of a city, signed in its behalf by its treasurer and countersigned by its mayor, was merely a promise to pay to the order of a certain person a certain amount of money. Appended to the note were certificates of the city clerk as to a vote of the city council, stating the terms upon which money in behalf of the city to a certain amount might be borrowed and notes therefor might be issued by the treasurer with the approval of a committee on finance, and as to a vote of that committee authorizing the mayor to approve notes in its behalf, a certificate of approval of the note by the mayor for the committee on finance and a certificate by the treasurer that the amount bor-

rowed, inclusive of the note in question, was less than the limit set by the vote of the council. The certificate of the treasurer was false. The note was sold before maturity by the payee to a purchaser for value. *Held,* that the validity of the note, even in the hands of a *bona fide* purchaser, depended upon the matters stated on it, giving to each the force to which it was entitled, and not assuming that, because it was signed by the treasurer and countersigned by the mayor, the note was authorized and valid.

. A vote of a city council authorizing and directing the city treasurer in anticipation of taxes "to borrow from time to time, with the approval of the committee on finance, a sum or sums" aggregating a certain amount of money, does not show an intention to confer upon the committee on finance a perfunctory commission to be exercised once for all at the beginning of the year, but places upon the members of the committee, acting upon their official responsibilities and having in view the public welfare, the duty to investigate and sanction according to their own independent judgments each separate borrowing made under the order, which duty cannot be delegated.

Official duties of municipal officers involving the exercise of discretion and judgment cannot be delegated.

Where, from certified copies of votes appended to a promissory note of a city, it appears that a vote of the city council authorized notes to be issued by the treasurer and required that each note should be approved by the entire committee on finance, which was composed of the mayor and seven members of the council, and that the committee on finance by a perfunctory vote attempted to delegate the duties and powers thus conferred upon it to the mayor for the entire year and that the note in question was approved "for the committee" by the mayor alone without other action by the committee, every holder of the note is charged with knowledge of the invalidity of the committee's action and of the fact that the note was issued without authority.

A city council authorized and directed the city treasurer in anticipation of taxes "to borrow from time to time, with the approval of the committee on finance, a sum or sums" aggregating a certain amount. The committee on finance was composed of the mayor and seven members of the council. It passed a vote "that the mayor and city treasurer be authorized to negotiate notes under the provisions of the order" of the council "from time to time as may be required." *Held,* that the vote of the committee was not within the powers and duties conferred upon them by the vote of the council, and that a note, executed by the mayor and treasurer in accordance with the vote of the committee and negotiated to a *bona fide* purchaser for value before maturity, did not bind the city.

Where a treasurer of a city, by means of a promissory note, which purported to be signed by him in behalf of the city, but which was invalid on its face, procures from one innocent of his fraud a check for a sum of money, deposits the check to the account of the city and immediately draws out the entire amount so deposited to pay another note fraudulently issued by him and to cover defalcations by him, the city is not liable in an action for money had and received by the signer of the check.

CONTRACT upon a promissory note set out in full in the opinion. Writ dated June 14, 1909.

In the Superior Court the case was submitted to *Richardson,* J., upon an agreed statement of facts. The judge found for the

defendant and judgment was entered accordingly.   The plain-
tiffs appealed.

The facts appear in the opinion.

*J. L. Thorndike,* (*H. Ware* with him,) for the plaintiffs.

*A. Withington,* for the defendant.

RUGG, J.   This is an action upon a promissory note of the
following tenor:

" $25,000. —                Newburyport, Mass., April 13th 1906.

> Perforated
> $25,000
> Stamp

For value received, the City of Newburyport, by its Treasurer,
promises to pay J. V. Felker City Treas., or order, Twenty-five
thousand Dollars, in six months without grace, at the First
National Bank of Boston

Approved for Committee on           J. V. Felker, City Treasurer
  Finance,

No. 795 W. F. Houston      ·      W. F. Houston Mayor
    Mayor

In City Council, City of Newburyport, Mass. January 1, 1906.

Ordered, that for the purpose of procuring a temporary loan
to, and for the use of the City of Newburyport, in anticipation
of the taxes of the present municipal year, the City Treasurer is
hereby authorized and directed to borrow from time to time,
with the approval of the Committee on Finance, a sum or sums,
in the aggregate not exceeding One hundred and Sixty thousand
dollars, with renewals thereof, and to execute and deliver the
Note or Notes of the City therefor, payable within one year from
the time the loan is made, with interest thereon or Discounted
at a rate not exceeding six per cent. per annum.   The said debt
or debts incurred by a loan or loans to the City under this order,
are to be paid from the said taxes of the present municipal year.

In Common Council January 1 1906

Order adopted by yea and nay vote.   Yeas 18, nays 0, absent 0,.
and sent up for concurrence.

J. Herman Carver Clerk

In Board of Aldermen, January 1 1906

Order adopted in concurrence by a yea and nay vote.   Yeas 7, nays 0, absent 0.

(Seal of city)                    George H. Stevens  City Clerk.
  Approved January 1 1906    W. F. Houston Mayor.
  A True Copy     Attest: George H. Stevens  City Clerk.

                          City of Newburyport, April 13, 1906.

I hereby certify that the total amount borrowed under the above authorization, including Note No. 795 of this date, is Eighty five thousand dollars.

                              J. V. Felker Treasurer

                  In Committee on Finance, January 9th 1906

Ordered, that his Honor the Mayor be authorized to approve for the Committee on Finance, all Notes of the City of Newburyport duly negotiated on any loan made for and in behalf of the City.

          Attest
George H. Stevens  Clerk of the Committee.

                    [Endorsement on back]
                  J. V. Felker City Treas."


This note was the first of five numbered consecutively bearing the same date, aggregating $80,000 sold to the plaintiffs by the city treasurer of the defendant on the day of their date.   The certificate of the city treasurer on each of the other four notes as to the amounts of indebtedness incurred under the order of the city council was increased by the face of each note and the aggregate of those preceding it.   The city council and the committee on finance, which was composed of seven members of the city council and the mayor, passed respectively the two orders set forth on the note, and the committee on January 9, 1906, further voted " That the Mayor and City Treasurer be authorized to negotiate notes under the provisions of the order of the City Council passed January 1, 1906, from time to time as may be required."   Between January 17, 1906, and April 13, 1906, Felker had negotiated under the authority of said order and

votes notes aggregating $98,475 upon forms substantially the same as that here in question, and had properly entered the proceeds from the sales of said notes upon the books of the city. The proceeds of the five notes dated April 13th were used by Felker to pay a single note for $80,000, dated November 13, 1905, and made in the name of the city, which note was the latest of many fraudulently issued and used to cover a series of defalcations made by him as city treasurer during a period of about ten years. No action was taken by the city council except to pass the order, copy of which appears on the note, and no action was taken by the committee on finance respecting the note in suit, and no action whatever was taken by it under the authority of the order of January 1 except to pass the two votes on January 9 before recited. The sums embezzled by Felker were not entered upon the books of the city, and the blanks used for the fraudulent notes were torn from the end of the note book, while those used for legitimate purposes were taken in order from the front of the note book. No other city official knew of the fraud of Felker. The defendant resists liability on this note on two grounds : first, because it appeared from the face of the note that it was not approved by the committee on finance as required by the vote of the city council; and, secondly, because of over-issue on the ground that the limit of borrowing authorized was $160,000, and the notes of April 13, 1906, of which this was one, brought the total borrowed up to $178,475.

All that appears in writing or print upon the note may be taken as a part of it. The several certificates of the city treasurer and city clerk are not in such form, and the phrase of the note itself is not such, as to indicate an assertion of their truth by the mayor and city treasurer in signing the note. Their terms import plainly that they are independent declarations by different city officials intended to stand on their own merits. R. L. c. 27, § 9, required the notes of the defendant to be signed by its treasurer and countersigned by its mayor. In this regard the order did not follow the statute, but of course was subject by implication to its terms. So far as any recitals are concerned, which might bind the city touching notes, these are the officers inferentially designated by the statute as alone

empowered to make them.  We do not decide what might be the
effect of a complete narration of facts, as a part of the note, at-
tested by these two officers, which would show on its face a valid
obligation binding upon the city.  That is not the case before us.
That point was left open by *Agawam National Bank* v. *South
Hadley*, 128 Mass. 503, and has not since been decided by this
court.  We have merely a promissory note in common form with-
out any recitals in its body, to which are appended several cer-
tificates.  The signing by the mayor and treasurer of the note
itself goes no further than the execution of the promise, and
does not purport to be an authentication of the other statements
upon the note.  These derive all their strength from the signa-
tures of the several officials affixed to them.  The issuance of the
note was not itself equivalent to any recital of the existence of
necessary precedent facts.  *Buchanan* v. *Litchfield*, 102 U. S.
278.  *Hopper* v. *Covington*, 118 U. S. 148.  The copy of the vote
of the city council, which alone was empowered to authorize the
issuance of the notes, is attested by the city clerk.  This vote
does not purport to empower any officer to make recitals.  All
that appears upon the note therefore are statements of the city
clerk and clerk of committee and city treasurer in way of assur-
ance to purchasers of the existence of certain facts.  None of
them are made in execution of any legal duty.  It was said
by Mr. Justice Gray in *Daviess County* v. *Dickinson,* 117 U. S.
657, at 664 : " An officer's certificate of a fact he has no au-
thority to determine is of no legal effect."  It is only as to
facts within the power of the officers to ascertain and deter-
mine that this statement can affect the city.  *Bloomfield* v.
*Charter Oak Bank*, 121 U. S. 121.  *Northern Bank* v. *Porter
Township*, 110 U. S. 608, 617.  A city clerk has a duty and
authority as to authentication of records.  But there is no stat-
ute which clothes a city treasurer with the power or duty to
determine and certify the outstanding indebtedness of the mu-
nicipality.  If such power can be inferred from the right to exe-
cute notes, then it inheres in the mayor and city treasurer, the
signatures of both of whom are required to validate a city note,
and not in either acting separately.  Hence it is unnecessary to
consider whether *Presidio County* v. *Noel-Young Bond & Stock
Co.* 212 U. S. 58, 65, 66, and the cases there cited announced

principles of law controlling in this Commonwealth, for there the recitals were in the body of the instrument and were signed by all the officers whose signatures were required to make.valid the obligation. Its validity must therefore depend upon the matters stated on the note, giving to each the force to which each is entitled, and not covering them all with the blanket of authority of the city itself acting through the city treasurer and mayor as agents duly empowered to execute notes. The point to be decided is whether under this principle the city is concluded by what appeared upon the note, or whether enough appears there to show the validity of the note.

This requires an analysis of the several statements on the note. The order of the city council bounded the liability to which the city could be subjected under the statute. In this Commonwealth a municipality has now no inherent power to borrow money or to issue notes. It can incur debts only in the manner and within the limitations prescribed by the statutes, which have somewhat narrowed powers previously possessed. *Agawam National Bank* v. *South Hadley*, 128 Mass. 503, 505. A prerequisite to the borrowing of any money in anticipation of taxes by the defendant was an authorizing vote of the city council. R. L. c. 27, § 6. This note did not undertake to describe the effect of the authorizing vote, but set it out at length, so that every holder was charged with notice of its terms. The order itself was not strictly in compliance with the statute, in that it did not require the countersigning of the note by the mayor. This however was necessarily implied. Moreover, the mayor was a member of the finance committee, and thus indirectly his approval was required. It is to be observed that the city treasurer was not given an absolute and unqualified authority to negotiate the loan, but he was authorized only to borrow " from time to time with the approval of the committee on finance." This language shows a plain purpose to enable the borrowing to be made at different intervals of time. The collocation of the description of this duty, imposed on the finance committee, indicates that it was to be exercised whenever the borrowing took place, either from time to time or by a single loan. The crucial word to be construed is " approval." This word, like many others, has different meanings, depending upon

the connection in which it is found and the subject matter to which it is applied. It is used here by a municipal legislative body in a formal order to express a supervisory power reposed in one of its sub-committees as a restraint upon the action of an executive officer of the city, which might serve the purpose of enlightening his judgment, controlling his discretion and limiting his opportunity for folly or dishonesty. It occurs in a vote relating to the borrowing of money for municipal purposes. This is no simple matter, but involves a high degree of skill in order to determine the time and conditions under which most favorable rates of interest and discount may be secured in the light of the actual financial necessities of the city. It does not manifest an intention to confer a perfunctory commission to be exercised once for all at the beginning of the year. That would be an idle ceremony, and would accomplish none of the results which the use of the language imports. The finance committee, as its name indicates and the ordinances of the defendant city provided, was the general legislative guardian of the financial affairs of the city. Approval, in this connection, means that the members of the finance committee, acting upon their official responsibilities and having in view the public welfare, shall investigate and sanction according to their own independent judgment, each separate borrowing made under the order. It implies reflection and sound business discretion as to each loan proposed. It did not confer a mere ministerial function, but imposed active and important prudential obligations. *Galligan* v. *Leonard*, 204 Mass. 202, 205. See cases collected in 4 Encyc. L. & P. 1228, *et seq.* The note shows by an attested copy of its vote how that committee undertook to perform the duty thus reposed in it, and hence every holder is charged with notice of the effect of its action. The vote plainly discloses that the members of the committee did not intend to exercise any individual judgment touching loans, but tried to delegate their authority of approval to the mayor. Official duties involving the exercise of discretion and judgment for the public weal cannot be delegated. They can be performed only in person. *Commonwealth* v. *Maletsky*, 203 Mass. 241, 246, and cases cited. *Hill* v. *Boston*, 193 Mass. 569, 573. *Commonwealth* v. *Smith*, 141 Mass. 135, 140. *Commonwealth* v. *Staples*, 191 Mass. 384,

386. *Stoughton, Sharon & Canton* v. *Baker,* 4 Mass. 522, 530. *Attorney General* v. *McCabe,* 172 Mass. 417, 420. *Ruggles* v. *Nantucket,* 11 Cush. 433. *Day* v. *Green,* 4 Cush. 433. *Coffin* v. *Nantucket,* 5 Cush. 269, 272. *Blair* v. *Waco,* 75 Fed. Rep. 800. *Curtis* v. *Portland,* 59 Maine, 483. *Andover* v. *Grafton,* 7 N. H. 298. *State* v. *Hauser,* 63 Ind. 155. *Birdsall* v. *Clark,* 73 N. Y. 73.

The certificate of the mayor upon the face of the note in these words, "Approved for Committee on Finance," read in connection with the vote of the committee on finance, denotes clearly that the mayor was undertaking to exercise merely the power delegated to him by the finance committee, and was not expressing (what did not exist in fact) an approval resting upon the actual exercise of the power conferred upon the committee by the order. It follows that this note showed upon its face its infirmity, in that it did not comply with the terms of the order by which alone it could acquire vitality. A note thus manifesting its invalidity on its face is not binding, even in the hands of a *bona fide* purchaser for value before maturity, either under our own decisions or under the general current of authority elsewhere. Nothing is better settled than that the holder of a note is held to a knowledge of the recitals it contains and is bound by their legal effect. *Agawam National Bank* v. *South Hadley,* 128 Mass. 503. *Lowell Five Cents Savings Bank* v. *Winchester,* 8 Allen, 109. *Benoit* v. *Conway,* 10 Allen, 528. *Abbott* v. *North Andover,* 145 Mass. 484. *Dickinson* v. *Conway,* 12 Allen, 487. *Lake County* v. *Graham,* 130 U. S. 674. *Gunnison County Commissioners* v. *Rollins,* 173 U. S. 255, 257. *Nesbit* v. *Riverside Independent District,* 144 U. S. 610. *Sutliff* v. *Lake County Commissioners,* 147 U. S. 230. *Daviess Co.* v. *Dickinson,* 117 U. S. 657.

It is urged, however, that as the only infirmity suggested in this regard touches the authority of the treasurer to issue the note under the order of the city council, the holder is not confined to the evidence on the face of the note, but may find that authority anywhere, if it exists, and that ample authority is found in the second vote of the finance committee of January 9, 1906, quoted above, which purported to empower the mayor and city treasurer to "negotiate" all the notes under the city council order. It is said that thus, "so far as the committee had

jurisdiction, it by one stroke gave the city treasurer coupled with the mayor authority to issue the notes to the limit named." *Citizens' Savings Bank* v. *Newburyport*, 169 Fed. Rep. 766, 772. But according to the construction which we have given to the order of the city council in respect to the duty thereby imposed on the finance committee, its vote, passed long before the present note was considered, and, so far as appears, before any specific borrowing was contemplated and eight days at least before any note was in fact negotiated, was no valid performance of the function required of them. It appears not to be on its face, because it does not profess by its terms to be the exercise of any judgment or discretion on the part of the committee. It is not an "approval" by the committee of any particular borrowing, and it was not made "from time to time" as the notes were issued. It does not purport by its terms to be an approval of an act of borrowing performed or proposed by the treasurer, but to be an antecedent authorization of an act not yet initiated. It attempts to authorize these officers to "negotiate" notes, which means to perform the entire transaction of asking for bids or ascertaining the discount by private inquiry, and deciding upon the amounts, the rate and time on which they should be given. *Everson* v. *General Accident, Fire & Life Assurance Co.* 202 Mass. 169, 172. The committee was not clothed by the order with power to authorize the city treasurer to act. His authority to borrow could flow only from the city council, and its order conferred that authority, and did not undertake to delegate it to its committee. But it conferred the authority upon the treasurer, subject, as before pointed out, to the limitation that the finance committee must approve his exercise of authority before it could be quickened with the legal breath of life. The effect of the vote now relied on was simply to surrender to the mayor and city treasurer the trust reposed in the committee. But this being an official responsibility involving discretion, could not be delegated. This is not a narrow or technical definition of words, but a natural interpretation according to their common meaning. So far as we are able to perceive, it is the only construction which gives force to all language of the order of the city council or renders it capable of accomplishing practical results in the administration of the affairs of the city. It follows

that this vote was ineffectual to constitute a compliance with the order of the city council as to the finance committee. The note was therefore not legally issued.

The considerations here stated are so conclusive to our mind as to compel us to a different conclusion from that reached by the United States Circuit Court of Appeals for this district in *Citizens' Savings Bank* v. *Newburyport*, 169 Fed. Rep. 766, in which a *certiorari* has been refused by the Supreme Court of the United States, 215 U. S. 598, which involved the other notes issued on April 13, 1906.

It becomes unnecessary to consider whether this note was an overissue.

The liability of the defendant on the count for money had and received is also urged. The check, with which this note and the others of even date was bought, was made to the order of the defendant, deposited in its bank account, and immediately used by the treasurer to cover his defalcations. If the note had been valid in the hands of the holder, the purchaser would not be answerable for the application of the purchase money. But this note was not a binding obligation of the defendant. So far as the city was concerned, the check was a voluntary payment without its knowledge. The fact that it was deposited in its bank account is not enough to charge the defendant with liability. This point is concluded against the plaintiff by *Railroad National Bank* v. *Lowell*, 109 Mass. 214, and *Agawam National Bank* v. *South Hadley*, 128 Mass. 503. It is the application of a widely prevailing principle. *Craft* v. *South Boston Railroad*, 150 Mass. 207. *Foote* v. *Cotting*, 195 Mass. 55. *Boston Electric Co.* v. *Cambridge*, 163 Mass. 64. Even direct benefits conferred do not necessarily impose liability upon an incorporated subdivision of government. *Adams* v. *County of Essex*, 205 Mass. 189. But here no benefit was conferred on the defendant.

This is not a case of issue of bonds valid on their face but void by reason of lack of statutory or other authority, where all the acts done have been approved in fact by proper officers of the city, and where the city has received and used the money with the authority of its responsible officers (see *Louisiana* v. *Wood*, 102 U. S. 294), but a case where both the plaintiffs and

the city have suffered by the criminal acts of one person, who put forth a note invalid on its face and misappropriated the proceeds.

*Judgment for the defendant affirmed.*