Hibbard, P. J.
This is an action of contract in which the plaintiff seeks to recover from the defendant because of its alleged failure to make payments due to the plaintiff by reason of the provisions of the Massachusetts Employment Security Law. In addition the plaintiff -seeks to recover from the defendant the sum of Six thousand ($6,000.) dollars as a penalty imposed for failure to make said payments.
The defendant’s answer-is a general denial and plea of payment. The issue is a narrow one. The report states that the penalty above referred to was imposed by Arthur H. Stewart, an analyst in the Division of Employment Security, without any knowledge or any direct authority for the specific assessment from the Director of the Division. The evidence tended to show that Mr. Stewart had im *159 posed assessments upon other employers and that the Director knew he was performing this task. However the Director testified he was never consulted by Mr. Stewart about this particular assessment and had no knowledge that it had been imposed.
The defendant seasonably filed one request for a ruling. It was of the following tenor:
“Now comes the defendant in the above-entitled action and requests that the Court make rulings of law as follows:
“1. That the plaintiff cannot recover the item of penalties declared on as a matter of law because: a. It was not assessed by the Director, b. Because the Director did not delegate his authority to anyone to make such assessment, e. That the Director has no power to delegate his authority to make such assessments. d. The assessment was not made in the manner prescribed by law.”
The Trial Court found that the defendant owed to the plaintiff the sum of $18,653.18 but that after the suit was brought, payments and credits amounting to $9119 were paid by the defendant to the plaintiff so that the balance was $9534.18.
Proceeding under what is now General Laws, Chapter 151 A, Section 15A, the analyst assessed penalties on certain overdue payments for contributions required of the defendant by said Chapter. Instead of computing the actual interest, the assessment was on the basis of five dollars per day and the sum found due as such penalty Six thousand ($6,000.) dollars. With respect to the authority of the analyst, the Trial Court found as follows:
“As to the authority of the analyst, Mr. Stewart, to assess the penalties under said Section 15A, it would seem that he had ample authority to do so, inasmuch as it appeared from his testimony and from that of the Director, Mr. Robert E. Marshall, that shortly *160 after the latter assumed1 charge of the Division as Director on February 5, 1940, he set up a Job Classification Plan which provided, in part that Mr. Stewart’s duties should be ‘Whenever required, prepares complete statements of employers’ accounts1 for the Legal Department, establishes assessments on contributions against employers who had failed to file reports and/or pay contributions, interest, and penalty payments as required. ’ There was also evidence that the Director knew that Mr. Stewart was performing the task of imposing penalties and that the plan which went into effect about May 1940, was still in full force' and effect in October, 1942, when these assessments were made.”
The Trial Court denied the requested ruling.
A careful study of the provisions of said Chapter 151A discloses that the Director of the Division of Employment Security is charged with certain duties and clothed with certain powers. The duties are set forth in sections ten to fourteen inclusive, nineteen, twenty, twenty-two to twenty-five inclusive, thirty-two, thirty-four and thirty-eight. Without too much refinement of distinction, the powers are set forth in sections fifteen, sixteen, eighteen, thirty-five, thirty-eight, forty-two, forty-three and forty-seven.
It must be conceded that in such an administrative division, there must necessarily be a large mass of detail and functioning which has to be entrusted to agents and employees. On the other hand, in the exercise of power, it must be held that the legislature did not intend to delegate the real authority to “officers, accountants, clerks, secretaries, agents, investigators and other officers and employees” appointed by the Director or to permit the Director to authorize any person to perform any of the functions of the Director and certainly not to exercise powers which are quasi-judicial and which might be harshly or unjustly used. The power is vested in an individual, presumably qualified to exercise such powers wisely and fairly. *161 True the material upon which the Director bases his decision may and probably will have to be compiled by others but the ultimate decision must be made by the Director himself. This view finds support in the opinion in Sodekson vs. Lynch, 298 Mass. 72 at page 74. The Court quoting from Brown vs. Newburyport, 209 Mass. 259 at page 266 said “Official duties involving the exercise of discretion and judgment for the public weal cannot be delegated. They can be performed only in person. ’ ’
There are other citations in this opinion supporting this statement.
The subject matter of the delegation of authority is also considered in Leroy vs. Worcester Street Railway Company, 287 Mass. 1 at pages 6 and 8, and in a criminal case in Commonwealth vs. Smith, 141 Mass. 135, at pages 139 and 140. A pursuit of the theory that the Director can delegate his duties and powers at will to another leads logically to an absurdity and would reduce him to a mere office holder and salary receiver.
It must be borne in mind that in the instant action a penalty is imposed. The word “penalty” presupposes evidence and the exercise of judicial examination, finding and authority.
It is clear from the report that the penalty was determined and imposed by an employee called an analyst, which name does not appear in section 9K of Chapter 23 and that the Director did not participate in the assessment of the penalty. In fact he knew nothing of the case and the action of the analyst. If this employee had any authority for his action, it must be found in the order of the Director in setting up Job Classification Plan which provided in part that said analyst’s duties should be only if required to prepare complete statements of employers’ accounts for the Legal Department, establish assessments on contributions *162 (a somewhat ambiguous phrase) against employers who have failed to pay contributions, interest and penalty payments as required. A fair inference from these' words is that the analyst’s duties were largely concerned with computations and after such had been compiled, the passing over of them to the Legal Department. They fall far short of the delegation of power to penalize in the form of assessments. That is the responsibility of the Director which he cannot delegate.
It is significant that in section 9K of said chapter 23 of the General Laws, the legislature used the following language:
‘1 The Director shall fix the duties and powers of all persons appointed and employed by him and may authorize any such person to perform any of the functions of the Director under this chapter.”
The word' function” can scarcely be expanded to include powers.
In our view of the issue, there was prejudicial error in the denial of the ruling requested by the defendant. The case must be remanded to the originating court for a new trial.
*163 STATEMENT OF THE OWNERSHIP, MANAGEMENT, CIRCULATION, ETC. REQUIRED BY THE ACTS OF CONGRESS OF AUGUST 24, 1912. AND MARCH 3, 1933.
Of Massachusetts Appellate Division Reports published bi-monthly at Boston Mass, for Oct 1, 1916.
State of Massachusetts, County of Suffolk, ss.:
Before me, a Notary Public in and for the State and county aforesaid, personally appeared A. Moskow, who having been duly sworn according to law, deposes and says that he is the editor of the Massachusetts Appellate Division Reports and that the following is, to the best of his knowledge and belief, a true statement of the ownership1, management (and if a daily paper, the circulation), etc., of the aforesaid publication for the date shown in the above caption, required by the Act of August 24, 1912, as amended by the Act-of March 3, 1933, embodied in section 637, Postal Laws and Regulations, printed on the reverse of his form, to wit:
1. That the names and addresses of the publisher, editor, managing editor, and business managers are: Name of Publisher, Lawyers’ Brief & Publishing Co., Post office address, 68 Devonshire St., Boston; Editors, A. Moskow — H. G. Slater; Managing Editor, A. Moskow; Business Manager, R. S. Hoffman, all of Boston, Mass.
2. That the owner is: (If owned by a corporation, its name and address must be stated and also immediately thereunder the names and addresses of stockholders owning or holding one per cent or more of total amount of stock. If not owned by a corporation, the names and addresses of the individual owners must be given. If owned by a firm, company, or other unincorporated concern, its name and address, as well as those of each individual member, must be given.) Lawyers’ Brief & Publishing Co., 68 Devonshire St., Boston; W. Kerkin, T. Lyons, A. Moskow and W. G. Embree, all of Boston, Mass.
3. That the known bondholders, mortgagees, and other security holders owning or holding 1 per cent or more of total amount of bonds, mortgages, or other securities are: (If there are non'e, so state.) None.
4. That the two paragraphs next above, giving the names of the owners, stockholders, and security holders, if any, contain not only the list of stockholders and security holders as they appear upon the books of the company but also, in cases where the stockholder or security holder appears upon the books of the company as trustee or in any other fiduciary relation, the name of the person or corporation for whom such trustee is acting, is given; also that the said two paragraphs contain statements embracing affiant’s full knowledge and belief as to- the circumstances and conditions under which stockholders and security holders who do not appear upon the books of tho company as trustees, hold stock and securities in a capacity other than that of a bona fide owner; and this affiant has no reason to believe that any other person, association, or corporation has any interest direct or indirect in the said stock, bonds, or other securities than as so stated by him.
A. MOSKOW, Editor,
Sworn to and subscribed before me this sixteenth day of October, 1946.
(Seal)
JOHN H. McREADY.
(My commission expires April 23, 1948.)