King, J.,
(orally)
Reep brought an action against the Toledo Stove Co. in the court of common pleas, and recovered a verdict and judgment for $3,000, on account of injuries claimed to have been received while in the employ of thei stove company, from the bursting of an emery wheel on which he was grinding stove castings.
The claim most urged in the trial court and here was and is, that Reep was employed, not by the stove company, but by an independent contractor, who in this case was named Soden, and that the stove company owed to him, Reep, no duty such as a master owes to his servants, in respect either to the machinery upon which he worked or the place where he was at work.
The first material objection I will notice is to the evidence. This question was asked of the plaintiff below when he was testifying:
“Q, What if any effect upon your continuing in your work did Soden’s promise have, when he said he would have the wheel repaired? A. Well, it had effect enough to keep me to work. I relied upon him seeing it was fixed.”
A motion to strike out was denied, and an exception taken. There are other objections in the record, made at the time of the trial, to evidence offered showing the declarations of this man Soden. I think they all might'be disposed of, except this one, perhaps, with this remark:, that whether competent or not depended upon the determination of the question at issue, whether Soden was an independent contractor, or whether he was an employe of the defendant and the foreman in charge of this particular work, over the plaintiff. That is what the controversy was about, and the court could not very well, at the situation of the case when offered, exclude that testimony; for if he was foreman, bis declaration about this work and this machine *60 ry, and his declarations, if he made any such, that he would have it repaired if anything was the matter with it, were all competent to show the knowledge of the company and notice to it of defects in the machinery, since the plaintiff himself testified that he knew of the defects, therefore he could not be excused from continuing the use of this defective machinery except for the single reason that his employer had promised him that he would fix it within a reasonable time. So that evidence, we think, is all competent, and the effect it will have depends on what the court and jury shall determine upon the question of law and fact raised in the ease, whether Soden was contractor or foreman.
The objection to this question is that the plaintiff could not testify to his belief, or to the fact that he relied upon these promises. There is no authority either way upon that precise question that we have been able to discover. The general authority is stated in works upon evidence and in cases where the question has been called out, that a party whose motives or intentions are called in question and made an issue in the case, may testify to his motives and to his intentions. Just how far he can go, in what variety of cases he may do that, perhaps the courts have not yet defined. One case coming pretty close is that in 152 Mass., 160 and 162, where there was a defective machine in use by an employe, and he complained to the master about it, and the master, instead of promising to repair it, told him that there was no danger from the use of it — to go on and use it. He was asked whether he believed what the master told him when he told him there was no danger, or whether he relied on that. He said he did. It was held by the supreme judicial court of Massachusetts that that was a competent answer to be given to the jury in that case. I say that comes nearer to the question before us than any case that we have been able to find. It is held in *61 Manufacturing Co. v. Morrisby, 40 Ohio St., 148, and by many other courts of this country, that one is excused from the charge of contributory negligence on account of his use of machinery that he knows is defective or out of repair, upon his showing that he complained of its defects to the person authorized to repair it, who promised to repair it; and with that express promise to repair it he may then continue in the work a reasonable length of time thereafter. This is stated in Shearman & Redfield on Negligence, par. 215, p. 373, Vol. 1, as follows:
“There is no longer any doubt that where a master has expressly promised to repair a defect, the servant does not assume the risk of an injury caused thereby within such a period of time after the promise as would be reasonably allowed for its performance, or indeed, within any period which would no< preclude all reasonable expectation that the promise might be kept.”
That doctrine, as I say, has gone into the law of the land, and has become such by its adoption by the courts, notably in 100 U. S., 213, one of the first of a series of cases in this country, which has been followed in many states. The language of the court in 100 U. S., is the exact language which I read from this author.
So that the only question which the jury had to pass upon' was whether this promise was made, and whether, having been made, the employe relied upon it, and so relying, continued at his work. It strikes this court, to inquire of the party himself when he has testified to such promise as the witness had in this case, “What effect did that have upon you ?” “ What reliance, if any, did you place in that statement?” or some form of question like that, is competent. The question here was what effect it had upon his continuing work. That is not objectionable, we think, because it is leading, and certainly is not objectionable because the answer would be a decision of the con *62 troverted point. We think he may testify to that when called out by some proper question. Ordinarily the witness will not be allowed to tell what he thought, but in that kind of a case it seems to us that he may testify that he relied upon these promises, and believed them. Other circumstances may appear in the case showing that he ought not to have relied upon them — 'that he had no business to rely upon them — and in that case he assumes the risk. Instead of promising to repair it, the employer may have said he would not repair it. He cannot then complain if injured, because his right to continue in the employ after his knowledge is not because of his notification to the employer, but because the employer induced him to remain and continue in the service under the promise that the defect should be remedied.
The question mainly argued is raised here by the charge of the court. It is excepted to that the court gave plaintiff’s fifth and sixth requests as modified, and that the court also modified and gave defendant's fifth request, and also for refusing to charge as requested by the defendant on page 233. I will read to indicate what the point was.. The same question appears substantially alike in all the requests that were given and in the charge as well. Plaintiff’s request five excepted to was in these words:
“If the defendant was engaged in operating its factory, and had charge and control over the machinery being operated therein, then it was bound to exercise reasonable and ordinary care to have the machine at which plaintiff was-working in a reasonably safe condition. To ascertain whether in fact the plaintiff was an employe of the defendant, and that the defendant was in duty bound as toward' him to exercise this reasonable and ordinary care to keep the machinery in order, you will consider all the evidence as to the terms and conditions of plaintiff’s hiring, by whom he was paid, and what the real arrangement was between the plaintiff and those engaged in operating the stove works. ”
*63 Also plaintiff’s sixth request:
“If the plaintiff was employed by Soden, and Soden was an independent contractor of the defendant and had assumed the duty to keep the machinery in repair, then the defendant company is not liable for the negligence of Soden as such contractor, if he was negligent in not repairing the machine. But if, on the other hand, by the terms of the contract between Soden and the defendant, Soden did not engage to keep the machinery in repair as a part of his duty under his contract, then Soden was not an independent contractor to such an extent as to relieve the defendant from the duty to look after and keep the machinery in repair.”
Defendant’s fifth request is too long for me to read here but it embodied the idea which the defendant was there seeking to have the court give, that under the arrangement which it claimed had been made with Soden be was an independent contractor; but the court modified it by the words “if the employer retained no control over the machinery and repairs thereon,” then the company would not be liable. The court had injected into it the words “or over the machine and repairs thereon.” So on page 233, perhaps, the question may fairly seem to have been presented. Counsel for defendant below stated to the court:
“In view of the modifications which the court has made to the requests, I desire to submit a verbal request to the court on a particular feature of the case which was not given by the original request. I ask the court to say to the jury that if they find that Soden was a contractor for mounting stoves at a contract price for the work, complete, and to employ his own labor for that purpose, and that the company reserved to itself the control of the machinery, with the right and duty to repair the same, then that a notice by the plaintiff to Soden of the defective condition of the machine, and a promise by Soden to repair the same, would not constitute a promise binding upon the company which would entitle him to recover by reason of his reliance there-on."
*64 This the court refused to give.
This indicates, then, that the parties were undertaking to have the court define exactly what would constitute an independent contractor. The court refused to say to the jury that if it was the arrangement between them that the company had reserved to itself the repair of the machinery, and then that certain other elements had existed, that would make an independent contractor; but on the contrary, the court directed that if certain elements existed which on the trial both parties insisted upon, and if the company had reserved the right of control over the machinery and repairs, then Soden was not such an independent contractor as would relieve the company from liability for its negligence in failing to repair the machinery employed there in that factory, or in that place. Perhaps, whether this ruling was correct, and whether the court ought or ought not to have given the request, depends a little on the state of the testimony. It is true there was a dispute as to some portions of it, but as to the material questions there was but little, if any, dispute. The stove company was engaged in the work of building stoves for the market — constructing them, creating them out of raw iron .and steel. They took the iron and moulded it and formed it into different shapes and castings that were required for the production of stoves. They cleaned and polished these castings. They put them together into the form of completed stoves. They crated and sold, and shipped them when they were sold. All these things were done in this factory. They had, of course, a moulding room, and a different room where they put together the castings, called “mounting.” Before the plaintiff Keep went to work,there had been an arrangement in writing entered into between one Scullion and the company, by which Scullion had contracted with the company that he would mount their stoves at so much per stove and furnish his own help; and this agreement provided that he *65 would care for the machinery used in the mounting room. The process of mounting was largely manual, except that it was found that these castings, when they came from the moulding room where they had been polished, had some inequalities upon them which required filing or grinding in order to make them fit together when put into stoves. Holes would have to be drilled out where they had filled in; slots or creases would have to be fitted or ground. This was done with large and small emery wheels, and with files and punches and other implements and tools which were necessary to the operation. Among the tools used was an emery wheel about eighteen inches in diameter and about one-half or five-eighths of an inch in thickness, placed upon a shaft which, when in operation, revolved at about 1,800 revolutions a minute; and it was while grinding the casting of a stove door upon this emery wheel that the wheel broke or buret and flew apart, and some piece struck Reep and injured him. The wheel was a narrow or thin wheel, and was used for grinding in those places where a wider wheel could not be used. It was necessary sometimes to grind the lugs or hinges of a door; and that I think was perhaps what he was doing at this time. The work of mounting stoves after the castings had been made and polished • was done in this room, and a contract was made with Scullion that he should mount them at so much per stove, employing his own help, using the room, tools, and machinery of the stove company therefor. There is some evidence to show that he kept the time of his men, and that be paid them. There is also other evidence to show that he did not pay them. It is conclusive, I think, that he left suddenly-abandoned this work — went away; and when he left he had not paid his men, and that the company, at least on that occasion, did pay them, and I think perhaps it had been paying them before. There was then a time when Scullion was away that there appears to have been no regu *66 lar foreman by contract. Soden had been there at work, during the time that Scullion was there, and it is said that he had an interest with Scullion in this contract. He went away, and was away some months, and after Scullion departed, Soden was brought back there by the company, and he came in and took up the business of mounting stoves. He did not undertake to fulfill or perform Scullion’s contract, but he made an arrangement of his own with the company. He was a skilled workman in mounting stoves, and had worked at that business for some time. The arrangement which he made, about which there does' not seem to be any dispute, was that he should attend to the mounting of these stoves, furnish his own men therefor; that he should receive so much a stove; that the company should care for the machinery and repair it, if repairs were needed; that he, Soden, would do that work for the company as theii representative upon their paying him such a price as it was worth. For mounting the stoves he was to receive the price that was agreed upon for mounting stoves. At the time Soden went in there Keep was at work, as he had been employed by Scullion. These stove mounters received the price per stove that was generally understood and agreed upon among themselves, but it was somewhat less in amount than that received by Soden. In other words, Soden would receive a percentage upon their work of mounting stoves as pay for his services. He had charge of it, He employed these men — put them in there. He had charge of the work in the mounting room, but he did not have exclusive charge. . The evidence shows that the superintendent of the company was repeatedly there many hours, and almost every day, examining and watching . the work of mounting; that they had an inspector who inspected all the stoves before they were taken away from that room to the sales room or the store room; that the power was furnished by. the company; that the company furnished this *67 general manager there; furnished the engineer, fireman, and bookkeeper; that the wages of these men were paid from pay-rolls that were reported at the office. There is a dispute whether Soden kept the time or the company kept it, but the evidence seems to indicate that both kept it. The company had a man who either kept it or got it from Soden. But he was around there for the purpose of getting it. I ought to say what he had to keep was the number of stoves that were mounted. They had a man who did that, and Soden did it. Soden was interested in keeping it, of ■course, because upon the number of stoves mounted depended the amount of his compensation.
It perhaps was not a case in which the court would have been justified in saying directly to the jury that this man •Soden was or was not an independent contractor, or that he was not the foreman. For the purposes of this case it is •only necessary to hold that he was their representative, first, in making the promise that this machinery should be vepaired; second, in the knowledge he acquired that it was •out of repair.
There never was an actual contractual relation between ihe stove company and the plaintiff below.
It is upon these facts that the court made the charge that I have stated, and refused to give the requests. It is not ¡always clear, as will be seen from an examination of decided -cases, whether one be an independent contractor or an employe. The question has been discussed by several courts. .1 refer again to this text-book — Shearman & Redfield, sec. 164 — where it seems to be discussed:
“Although in a general sense, every person who enters into a contract may be called a contractor, yet that word, for want of a better one, has come to be used with special reference to a person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect of all its details. *68 The true test of a ‘contractor’ would seem to be, that he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished.”
Again in the following section I read:
‘‘One who has an independent business, and generally serves only in the capacity of a contractor, may abandon that character for a tim6, and become a mere servant or agent, and this, too, without doing work of a different nature from that to which he is accustomed. If he submits himself to the direction of his employer as to the details of the work, fulfilling his wishes, not merely as to the result, but also as to the means by which that result is to be obtained, the contractor becomes a servant in respect to that work. And he may be a contractor as to part of his service, and a servant as to part. Whether he works as contractor or as servant, is a question of mingled law and fact, which it is scarcely possible to decide by any fixed rule.”
There is an interesting case discussing this question in 15 Mont., 582; also in 137 Mass., 123. In the latter case the question arose upon the following instruction to the jury:
‘‘You will observe that, although there has been evidence introduced upon the one side and the other, as to the actual control which the trustee, through one of their number, exercised over t.he work, and that is all proper and competent evidence for you in considering the matter, yet that the absolute test is not the exercise of power of control, but the right to exercise power of control. If, for instance, there was nothing in the case but this contract, and there was no question that the parties were acting under it, if that is the view you take of it, and that the injury was occasioned by the negligence of Elston, then, although the trustees should be across the Atlantic, nevertheless, under the intructions I give you, if they retained the power to control and direct this work, they would be liable; because it is the possession of the right, of interference, the right of control, that puts upon a party the duty of seeing that the person who stands in that relation does his duty properly.”
*69 The court say about that case:
“In this case, for the reasons given in the instructions, we think the defendants are liable for injuries occasioned by the negligence of Elston and his employes in doing the work which the defendants requested Elston to do.
In that case there was no question but that the employes were the employes of Elston originally.
In Cincinnati v. Stone, 5 Ohio St., 38 and 42, is a discussion of that same question, and also in Tiffin v. McCormack, 34 Ohio St., 638. Neither of these cases, it seems, were cited in the argument. The cases, however, differ from that in the Massachusetts report which I-read, and from the Montana case. The case of Tiffin v. McCormack, supra, is important in that it discusses what constitutes the distinguishing element in the case of contractor or foreman. This was a case where the city of Tiffin hired a person or made a contract with a person, to go into the city’s quarry and quarry stone therein, and break them up into a pile, and pile them up in the quarry so that they could be measured, and to furnish and find the tools for the said work — all for, and at the agreed price of one dollar per perch as measured in the quarry. It was held:
“That the true relation between the city, as proprietor of the stone quarry, and Ardner, was that of master and servant, instead of employer and independent contractor,”
They say on page 643:
“There was no ‘job’ or defined quantity of work contracted for. The services of Ardner were subject to be determined at the pleasure of either party. The compensation was to be measured by the quantity of labor performed. It appears to us to have been an ordinary contract for work and labor, which creates, between the employer and employed, the relation of master and servant, within the meaning of the law in regard to that subject. It is true that the service, namely, the quarrying of stone in the employer’s quarry, was to be done by the use of powder and tools furnished by the employe, but this con *70 dition in the contract, did not affect the legal relations between the parties. It was significant only as a matter affecting the rate of compensation. And it is also true that the city had no other or further control over Ardner in said work. Whether this language means that the city exercised no other or further control, or that the city contracted with Ardner that it would not exercise any other or further control over the work, makes no difference. If it were a mere failure to exercise control, it was the fault of the city. If it was part of the contract with the servant, that no other or further control should be exercised by the city, it is enough to say that a master can not exonerate himself from responsibility to third persons, which the law imposes upon him, for injury resulting from the misconduct of his servant, by contracting with the servant that he will not exercise any control over him, and will not, therefore, be responsible for any injury that he may wrongfully inflict.”
. I read that clause because it is applicable when we are undertaking to arrive at the relation which existed between the stove company and Soden, no matter by whom the action was brought. But it is based, I want to say, upon a case where the principles of independent contractor would seem to be very much more plainly apparent than in the case at bar. In the case at bar it is a manufacturing company. They are seeking to produce stoves, and they employ men for that purpose — some to do one kind of work and others another kind of work, to produce a given thing, to-wit: a completed stove, ready for the market. One man makes a piece, another man takes it and files it, and puts it and other pieces together. A room in their factory is devoted to mounting these stoves. As a method of having that work done,or determining its compensation, they make an arrangement with one man to put these stoves together, and pay him so much per stove, and furnish themselves not only the material, but all the tools and machinery, and expressly contract that they will keep it in repair — -not saying that that would not have been their legal obligation, legal *71 duty, but they expressly contract with this man that they will keep this machinery in repair, and employed him tor that puprose. . So that not only might he be the foreman in this room, but he was by express contract the direct representative of the company to keep this machinery in repair.
It is held over and over again that the obligation of th® company to keep its machinery in repair is a direct obligation, and that one injured by its failure to do that, or through the failure of the company’s servants to properly repair, that he is not defeated of his cause of action because of the failure by the company of a direct duty to repair a defect; and if a co-seivant should fail to repair when ordered by the company, that negligence itself would not be one that would defeat an action by a co-servant who was injured, without knowledge, of course, of his co-servant’s negligence. He represents the company in repairing the machinery, and the company contracted with Soden ip this case to keep the machinery in repair. They, as I say, furnished all these things, and they set him there in charge of the work; and there is no agreement that he should remain there one month, or one year, or one day: there is no agreement which would prevent them discharging him at any time. There is no limit in the contract providing how many stoves he shall set up. The very distinguishing element which makes an independent contractor, is that it must be a contract for a job, and this is not a contract for a job; it is a contract to work for the stove company as long as the stove company want this man to work for them by the piece — nothing else. It is a piece work, so called — $ very common method of employment. In fact, it enters almost every manufacturing establishment where they are manufacturing completed articles for sale. Here they only put together the stoves at so much a stove. Again, this company oversaw all this work. They paid these workmens *72 directly from their office; and there was nothing in the relationship between Soden and the men, or the company and the men, which notified them of the relationship which might exist, created by the contract, between Soden and the company.
So far as these charges were concerned, I want to say we do not think they were to the prejudice of the plaintiff in error. The court seems all the time to lay stress, either in his refusals to charge or in his charge which he gave, upon the idea that the company retained the right or the control over the machinery. I deem that of very little importance. It is true the company did retain it by express contract; but it occurs to me that under this contract, if they agreed with Mr. Soden that he should keep the machinery in repair, make these stoves at so much per stove, and only’ contracted that particular work in the creation of a stove, it would not change the relationship a particle; that the company would still have been bound by the obligation which the law imposed upon it to furnish machinery reasonably fit for the work to be done, and would be liable for negligence in failing to keep it in repair. But here they relieve the case from doubt on that question by the express agreement that they will keep the machinery in repair, and employ him as their representative to do it. There is no dispute on that point. That being so, then nothing in these charges that were given could be prejudicial to the plaintiff in error. The refusal to give those which were asked by the plaintiff in error was not prejudicial, for the same reason.
The court, in my judgment, might have gone very much •further on that subject. I think as a matter of law, on the evidence in this case, that Soden was an employe of the stove company, and nothing else; that he was the foreman of that mounting room, and nothing else; and that in employing and discharging men he acted solely and only as 'the agent of the stove company.
Brown & Geddes, Charles Smeddau, King & Tracy, for Plaintiff in Error.
Hurd, Brumback & Thatcher, for Defendant in Error.
The effect of this contract was to determine the compensation that should be paid for the mounting of the stoves; and.in effect it was to make Soden foreman over that room, not only in the repair of the machinery, but in employing and discharging the men.
We are satisfied without discussing it that the verdict is not against the weight of the evidence.
The judgment will be affirmed.