HENRY SHEILS *vs.* COMMONWEALTH.

Suffolk.     March 8, 1940. — September 10, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Appropriation. General Court. Contract,* Validity, With Commonwealth. *Adjutant General. State Quartermaster. State Armories. Commonwealth.*

In St. 1938, c. 507, entitled "An Act providing funds for additional emergency work made necessary by the recent hurricane and floods," making appropriations "subject to the provisions of law regulating the disbursement of public funds and the approval thereof," an appropriation entitled "Service of Militia. Adjutant General, including expenses of Massachusetts National Guard," in the same amount as that previously reported by the adjutant general to the ways and means committee of the General Court as having been spent with the approval of the Governor and Council for various emergency items, including an item for repairs to armories, was not an appropriation supporting and making valid contracts previously negotiated and executed for emergency repairs on State armories by the State quartermaster under purported authority from the adjutant general but without his having seen them or being fully aware of their terms.

PETITION against the Commonwealth, filed in the Superior Court on May 1, 1939.

There was a decision for the Commonwealth by *Burns,* J. The petitioner alleged exceptions.

*N. H. Kolodny,* for the petitioner.

*D. J. Doherty,* Assistant Attorney General, for the Commonwealth.

QUA, J. The petitioner seeks to recover from the Commonwealth the contract price which he claims is owed to him under four alleged contracts by each of which he was to make certain specified "Alterations and Repairs caused by hurricane" at a named State armory. The total sum involved is over $17,000. It is conceded that the petitioner

has fully performed the specified work. His good faith in securing the contracts and in carrying them out is not now attacked. The question is whether the contracts created legal liabilities against the Commonwealth. The answer depends upon the authority of the officer who purported to execute the contracts in behalf of the Commonwealth and upon the existence or absence of an appropriation in proper form to support contracts executed as these were.

It was provided by G. L. (Ter. Ed.) c. 29, § 26, that "No obligation incurred by any officer or servant of the commonwealth in excess of the appropriation for the office, department or institution which he represents shall impose any liability upon the commonwealth." See now St. 1939, c. 502, § 12. See also G. L. (Ter. Ed.) c. 29, § 27, as amended by St. 1937, c. 359, and now as amended by St. 1939, c. 502, § 13. *Adams* v. *County of Essex*, 205 Mass. 189. *Peters* v. *Medford*, 295 Mass. 588, 591, 592. *Continental Construction Co.* v. *Lawrence*, 297 Mass. 513. St. 1938, c. 356, which was the general appropriation bill enacted in May of that year, contains in § 3 this provision, "No liabilities in excess of appropriations provided for under this act shall be incurred by any department or institution, except in cases of emergency, and then only upon the prior written approval of the governor and council."

The case has been argued by both parties on the theory that the regular appropriations for 1938 as set forth in St. 1938, c. 356, were not adequate, and that the appropriation necessary to support these contracts must be found, if at all, in St. 1938, c. 507, enacted at a special session of the Legislature held after the hurricane of September 21, 1938.[1]

The determinative facts are scarcely in dispute. On September 24 the Governor and Council voted that due to an extraordinary situation on account of the hurricane and floods, an emergency existed, and that pursuant to St.

---

[1] This statute was entitled, "An Act providing funds for additional emergency work made necessary by the recent hurricane and floods."— REPORTER.

1938, c. 356, § 3, last above quoted, approval be given "to the Departments named hereunder" to incur liabilities to an amount specified in excess of the previous appropriations. Then follow fourteen separate items, each of thirteen of which bears the name of one of the regular departments in which the executive and administrative work of the Commonwealth, other than that of offices, boards and commissions serving directly under the Governor or Council, is organized according to art. 66 of the Amendments to the Constitution. The remaining item (the ninth in order) reads thus, "Department of the Adjutant General 350,000." On September 28 the adjutant general, who was then General Cole, with the approval of the Governor, "authorized" one Drummey, an architect, "to proceed with the survey, report, inspection, specifications, such drawings as are necessary, and supervision of all repairs necessitated by the hurricane in the Military Department." Drummey testified that General Cole told him that the business of executing contracts for repairs was to be done with a Major Harrison. Harrison was State quartermaster. On October 21 Drummey made a written report to Harrison of the damage to the four armories and of the "Lowest Bid Received" to repair each. In each instance the petitioner was named as the lowest bidder. There was evidence that Drummey prepared the four contracts and submitted them to Harrison for his signature. All four contracts are expressed to be by and between the petitioner and "The Executive Department, Quartermaster General, Commonwealth of Massachusetts." They were signed, "William H. Harrison, Jr. Quartermaster General, Executive Department." Harrison testified that he was directed by the adjutant general "to accomplish the contracts"; that Drummey's report was presented to the adjutant general, who directed Harrison to complete and to sign the contracts. General Cole testified that he directed Harrison "to pursue the same policy with regard to the repairs of armories that he did ordinarily in the routine appropriations"; and that he presumed that Major Harrison and the petitioner executed the contracts at his direc-

tion, although he never saw the contracts. The judge found as a fact that General Cole never saw the contracts. Under date of October 27, after the date of the contracts, General Cole made a "report" to the chairman of the joint ways and means committee of the Legislature in which he stated that in "accordance with authority from the Governor and Executive Council, the following amounts of money have been spent or liabilities incurred for the expense: . . . ." Then follow various items relating principally to the pay and subsistence of troops and to the purchase, repair and replacement of supplies, and with these an item for repairs to armories amounting to $175,000. The total amount of the entire list was $321,900. General Cole also appeared before the committee on ways and means. St. 1938, c. 507, providing funds for the repair of buildings ·and the removal of fallen trees made necessary by the hurricane, "under the control of state departments hereinafter specified" (§ 1),. was passed at the special session as an emergency law and was approved by the Governor on October 28. Section 2 of the act contains forty-nine items of appropriations, most of which are grouped under general headings, such as "*Service of* . . ." various named State departments established by law. The first item, however, reads:

Item          "*Service of Militia.*
131a    Adjutant General, including expenses
           of Massachusetts National Guard   $321,900 00."

The figure mentioned in this item is the same as the total of the items in the "report" made by General Cole to the committee on ways and means. There is no item specifically designated for repairs on armories. There is no other item for any military activity. It is further provided in the act that the sums set forth are made available "subject to the provisions of law regulating the disbursement of public funds and the approval thereof."

The petitioner contends that the appropriation necessary to the validity of his contracts is to be found in this item

of $321,900. He concedes that his contracts cannot rest upon the authorization of the Governor and Council alone, because the appropriation of money is a legislative function. *Opinion of the Justices,* 302 Mass. 605, 614. But he contends that contracts, made in a case of emergency "upon the prior written approval of the governor and council" under St. 1938, c. 356, § 3, would become valid when an appropriation covering them was afterwards made by the Legislature. If we assume, without deciding, that this view is correct, and if we also assume, without deciding, that the allowance by the Governor and Council of lump sums for stated purposes was a prior approval under § 3 of liability upon particular contracts afterwards entered into, we must still inquire whether the appropriation by its terms covered the contracts.

Neither "Militia" nor "Adjutant General" is a usual designation of a State department. When used together, with "Service of Militia" as a general heading and "Adjutant General" as the subheading of the only item included under that general heading, the two expressions cannot mean more than that the designated sum may be expended for the service of the militia upon obligations incurred by the adjutant general or for the advancement of some public interest expressly or impliedly committed to his charge. They cannot give any new authority to make contracts to the State quartermaster or be construed as appropriating money for the payment of obligations previously incurred by him with respect to functions under his own separate jurisdiction. We pass without discussion the inaccurate designation of the title of the office of State quartermaster in the bodies and in the signatures of the contracts. There can hardly be doubt as to the identification of the office and of the officer. The State quartermaster is not a part of any establishment controlled by the adjutant general. He is not in most respects a subordinate or agent of the adjutant general or subject to his orders. He has separate statutory duties of his own. See G. L. (Ter. Ed.) c. 33, §§ 23, 46, 83, 110, 147, 151. See now the new c. 33, inserted by St. 1939, c. 425. Among them is included "the care and maintenance

of all armories belonging to the commonwealth." G. L. (Ter. Ed.) c. 33, § 39. See now § 38 (b) of the revised c. 33 inserted by St. 1939, c. 425. Chapter 33, § 45 (b), also provided that the necessary expenditures for care and maintenance of armories of the type with which we are concerned in this case should be made "subject to the approval of the state quartermaster." Probably General Cole had these statutory provisions in mind when he testified that he directed Major Harrison to pursue the routine policy. Both the adjutant general and the State quartermaster are officers of the land forces serving under the Governor as commander-in-chief. G. L. (Ter. Ed.) c. 6, § 16. For many years prior to 1938 the general appropriation bills had contained items grouped separately under the headings "*Service of the Adjutant General*," "*Service of the Militia*," and "*Service of the State Quartermaster*." St. 1928, c. 127, § 2. St. 1929, c. 146, § 2. St. 1930, c. 115, § 2. St. 1931, c. 245, § 2. St. 1932, c. 170, § 2. St. 1933, c. 174, § 2. St. 1934, c. 162, § 2. St. 1935, c. 249, § 2. St. 1936, c. 304, § 2. St. 1937, c. 234, § 2. The group headed "*Service of the State Quartermaster*" had contained a substantial item for the maintenance of armories. This practice was followed in the general appropriation act of 1938, St. 1938, c. 356, § 2, but it was not followed in c. 507, passed by the special session. When in § 2 of the latter statute the Legislature added the item "131a" to those appropriated in the former statute for "*Service of the Militia*" (the last of which had been numbered "131") it added the qualifying words "Adjutant General." We cannot fail to give effect to these words. We cannot construe the appropriation as being simply for the use of the militia without regard to the adjutant general.

The contracts were neither negotiated nor executed by the adjutant general. He never saw them. It does not appear that he was fully acquainted with their terms. The general finding of the judge against the petitioner carries the implication that his inferences of fact were against the petitioner. The adjutant general could not delegate to the State quartermaster any of his "official duties involving the

exercise of discretion and judgment for the public weal."
*Brown* v. *Newburyport,* 209 Mass. 259, 266.  *Commonwealth*
v. *Smith,* 141 Mass. 135.  *Sodekson* v. *Lynch,* 298 Mass.
72, 74.  Compare *West Springfield* v. *Mayo,* 265 Mass. 41,
44.  The State quartermaster had duties of his own in
respect to at least the ordinary repair of these armories,
but he had no command over the appropriation.  The appropriation did not cover contracts made either before or
after its passage by the State quartermaster.  The fact
that the State quartermaster commonly has charge of the
care and maintenance of armories and the requirement
of St. 1938, c. 507, § 1, that the sums appropriated be
"subject to the provisions of law regulating the disbursement of public funds and the approval thereof" do not
convert an appropriation to the service of the militia, adjutant general, into an appropriation to the service of the
State quartermaster, especially as the repairs in question
were not ordinary repairs but were required by an extraordinary calamity to meet which the Legislature passed special
and unusual appropriations.  The provision quoted finds
ample room for application in the many statutes regulating
the manner of disbursing public funds.

There was no ratification by the Legislature of the particular contracts themselves.  They are not mentioned in
the appropriation act.  It does not appear that the Legislature ever knew of the contracts or of their terms.

What has been said disposes of all of the exceptions.

                                        *Exceptions overruled.*