Kenyon Oil Co., Inc. *v.* Chief of the Fire Department of Douglas.

KENYON OIL COMPANY, INC. *vs.* CHIEF OF THE FIRE
DEPARTMENT OF DOUGLAS.[1]

Worcester. October 7, 1982. — May 6, 1983.

Present: Hale, C.J., Grant, & Armstrong, JJ.

*State Fire Marshal. Regulation. Fire Prevention. Gasoline Stations,*
Self-Service. *Municipal Corporations,* Fire department.

The fire chief of a town had no authority, by delegation or otherwise, to
rescind the approval given by the State Fire Marshal to an oil company
which proposed to operate a self-service gasoline station in the town
and, where the fire chief had declined to inspect the station in accord-
ance with the terms of the State Fire Marshal's approval and to certify
whether it conformed to approved plans, the oil company was entitled
to an order in the nature of mandamus directing the fire chief to do so.
[729-732]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 29, 1981.

The case was heard by *Meagher*, J.

*Frank E. Eastman* for the plaintiff.

*Don J. Virostek,* for the defendant, submitted a brief.

Armstrong, J. The plaintiff (Kenyon) operates a
gasoline station on Main Street in Douglas and seeks to con-
vert it to a self-service station. Kenyon submitted its con-
version plan to the chief of the fire department on
November 17, 1980, and the following day submitted it to
the State Fire Marshal with an application for approval of
the self-service facility. The State Fire Marshal replied on
April 9, 1981, by a letter which stated: "Enclosed please
find one (1) print of the above referenced self-service motor

---

[1] The chief, Edward A. Therrien, was also joined in his individual
capacity.

fuel facility stamped approved. Permission has been granted to operate this facility as per approved print and subject to the approval of the local Fire Department . . . . This approval is granted on the condition it may be revoked by the Fire Marshal for cause, after notice and a hearing. Operation of this installation remains subject to subsequent inspection by the local Fire Department. This approved facility may dispense motor fuel as a self-service facility only after the Head of the Fire Department . . . has certified . . . that he has found that the facility has been constructed, or rebuilt, and will be operated, in accordance with the plans . . . approved by this Office." An inspection form, requiring the fire chief's signature, accompanied the plan (or "print") and letter.

On June 9, 1981, the fire chief sent a letter to the Fire Marshal "to confirm . . . that I do not approve the 'self-service' station that is being instituted at this very moment on our small Main Street." The letter indicated that he and the police chief concurred that the facility would be "very dangerous and not in the best interest of this Town." On June 26 the Fire Marshal met with the fire chief at Kenyon's station, in the presence of representatives of Kenyon and two of the town's selectmen. At that meeting, according to the fire chief's testimony, the Kenyon representatives stated that they planned "to open up the station in the afternoon, whether they had the permit or not, and the Fire Marshal told me that he deputized me over and above the selectmen and all powers to put padlocks on there at the first ounce of gas that was sold." On July 1, 1981, the fire chief sent a second letter to the Fire Marshal outlining in detail the reasons for his opinion that a self-service station would be hazardous.[2]

---

[2] These had to do with the frequency of fires on the premises, the inadequate size of the lot to accommodate multiple vehicles, the fact that "large number[s] of young people, many of whom smoke, . . . congregate in the vicinity of . . . [the] covenience store which is located on the site," the potential effect on Main Street traffic, and the generally crowded condition of the area.

Kenyon then commenced this action seeking, on a preliminary basis, injunctive relief against the town's fire chief prohibiting the operation of a self-service facility and, as permanent relief, a declaration of the rights of the parties and money damages against the fire chief, both as such and as an individual. The judge found that the Fire Marshal had delegated to the fire chief "power to act as his agent in approving or disapproving the self-service gasoline station", entered a judgment declaring that the fire chief had acted properly in refusing to approve the station for the reasons stated in his July 1 letter (see note 2, *supra*). The case is before us on Kenyon's appeal.

The judge's finding of delegation does not indicate whether it was based on the terms of the Fire Marshal's letter or the events which took place at Kenyon's station on June 26, but we do not think there could have been a legally effective delegation in either case.

The source of the Fire Marshal's authority to approve or disapprove self-service installations is a regulation of the Board of Fire Prevention Regulations (527 Code Mass. Regs. § 5.04[16] [1981]) which, although making provision for notice to the head of the local fire department, places the power of approval in the Fire Marshal exclusively. Under G. L. c. 148, § 10A, as amended through St. 1981, c. 351, § 89, "head[s] of fire departments . . . shall . . . have and exercise such powers and duties in connection therewith as the marshal may direct," but while this section may authorize the Fire Marshal to delegate to the local fire chief the ministerial function of inspecting the completed facility to determine conformance with the approved plans, it cannot be read as authorizing the Marshal to subdelegate to the local fire chief the Marshal's function of approval. See *Commonwealth* v. *Badger*, 243 Mass. 137, 142 (1922); *Sodekson* v. *Lynch*, 298 Mass. 72, 74 (1937); *Sheils* v. *Commonwealth*, 306 Mass. 535, 540-541 (1940). See also *Concord* v. *Attorney Gen.*, 336 Mass. 17, 21 (1957); Rep. A.G., Pub. Doc. No. 12, at 119 (1978). Moreover, a natural reading of the Fire Marshal's letter indicates that the Mar-

shal in fact exercised the power of approval and did not delegate that power to the Douglas fire chief. The words "subject to the approval of the local Fire Department" in the opening paragraph of the letter are most reasonably interpreted as a reference to the inspection power elaborated in the final paragraph. Indeed, it seems not to have been the letter which was the act of approval, but rather the stamping and signing of approval on the plan or "print" of the station design. The approval as it appears on the plan has no qualification or suggestion that the approval by the Fire Marshal is dependent on a further discretionary approval of the fire chief.

Thus, when the Fire Marshal met with the fire chief and Kenyon representatives at the station on June 26, the application and plan had the approval contemplated by the Board of Fire Prevention Regulations and lacked only the fire chief's certification that the facility conformed to the approved plan. The fire chief could not properly withhold that certification if the facility did conform; and the Fire Marshal has at no time purported to withdraw or rescind his approval and has instead indicated in his letter of April 9, 1981, that such action would not be taken except for cause, and after notice and hearing. The record would not support a finding that the Fire Marshal delegated to the fire chief his power to revoke the approval for cause or otherwise.

This opinion should not be read as impugning the role of local officials in the regulation of self-service gasoline stations. It is clear that a municipality may prohibit self-service stations altogether, *Milton* v. *Attorney Gen.*, 372 Mass. 694 (1977); *Shell Oil Co.* v. *Revere*, 383 Mass. 682 (1981), and that in municipalities where self-service stations are allowed the licensing authority may decline by reason of local conditions to permit a self-service operation despite the fact that the Fire Marshal has approved the plans for the facility. *V.S.H. Realty, Inc.* v. *License Bd. of Worcester*, 13 Mass. App. Ct. 586 (1982). But in those cases the control of the municipality was exercised through by-laws or ordi-

nances or through the licensing power under G. L. c. 148, § 13. There is no prohibitory by-law in Douglas, and the license which Kenyon holds for storage and sale of gasoline is not conditioned on the traditional method of dispensing gasoline by a station attendant.[3] Consequently, Kenyon, having the requisite license and approval, is presently entitled to operate its station provided that the facility conforms to the approved plan. It is the duty of the fire chief to conduct the inspection to determine conformance and not to withhold such inspection as a means of preventing the operation of the facility.[4] See *Markus* v. *County of Middlesex,* 356 Mass. 517, 518-519 (1969); *Page* v. *Chief of Fire Dept. of Gardner,* 361 Mass. 849, 849-850 (1972).

Although the complaint initially sought damages, there was no attempt at trial to prove bad faith or malice, see *Gildea* v. *Ellershaw,* 363 Mass. 800, 820 (1973), and the plaintiff does not press the issue of damages in this court. The plaintiff has established that it is entitled to an order in

---

[3] General Laws c. 148, § 13, as amended through St. 1981, c. 622, deals expressly with the role of the fire chief in the initial licensing process by requiring, as a condition of license, that the application "have endorsed thereon the certificate of approval or disapproval of the head of the fire department." See *Chase* v. *Selectmen of Littleton,* 2 Mass. App. Ct. 159, 160 (1974). Similarly, the regulations of the Board of Fire Prevention Regulations require an application for the Fire Marshal's approval of a self-service facility to have been first submitted to the head of the local fire department. The apparent purpose of both requirements is to elicit the views of the head of the fire department so that his views may be taken into consideration in making the decision whether the license or approval should issue; but in both cases the role of the head of the fire department is advisory in nature, and the legal authority to issue the license or approve the plan is vested in the local licensing authority and the Fire Marshal, respectively.

[4] The local licensing authority may, under G. L. c. 148, § 13, revoke a license, but only for cause, after notice and hearing. See generally *Foster from Gloucester, Inc.* v. *City Council of Gloucester,* 10 Mass. App. Ct. 284 (1980). The head of the fire department has authority to issue a cease and desist order under § 13 "when a fire explosion hazard exists or is liable to exist due to the exercise of [a] license"; but that provision contemplates a situation of some urgency and is not, of course, to be used as a means of countermanding licenses given by the local licensing authority or approvals given by the Fire Marshal.

the nature of mandamus directing the fire chief to perform the inspection and to certify his findings to the Fire Marshal.

The judgment is reversed, and the case is remanded to the trial court for the entry of a new judgment in conformity with this opinion.

*So ordered.*